TENNESSEE GAS TRANSMISSION CO., a Delaware Corporation, Plaintiff, v. CLEVELAND TRUST CO. et, Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. WARD et, Defendant.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. EDGERTON et, Defendant.
TENNESSEE GAS TRANSMISSION CO.. Plaintiff, v. ZELLERS et, Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. SCHWAB, Defendant.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. EATON et, FIRESTONE TIRE & RUBBER CO., New Deft., Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v COPE et, Defendants.
TENNESSEE GAS TRANSMISSION CO., Plaintiff, v. DELL et, Defendants.

Probate Court, Columbiana County.

Nos. 49019, 49020, 49021, 49022, 49023, 49024, 49047, 49048.
Decided February 6, 1953.

Harrington, Huxley & Smith (By Robert A. Manchester), Youngstown, Moore & Moore (By W. B. Moore Jr.), Lisbon, for plaintiff.

Baker, Hostetler & Patterson (By Spencer W. Reeder), Cleveland, Vodrey, Vodrey, Buzzard & Shay (By Raymond S. Buzzard), East Liverpool, for defendants The Cleveland Trust Co., The Cleveland Trust Co. as Trustee and The Firestone Tire & Rubber Company.

Frank W. Springer, East Palestine, for defendant S. E. Ward et ux and for defendant Wm. N. Cope et ux.

Fitch & Kendall, Salem, for defendant Jos. B. Edgerton et ux; Lois H. & Chas. H. Zellers; Herman Schwab and James F. Dell et ux.

Vodrey, Vodrey, Buzzard & Shay (By Raymond S. Buzzard), East Liverpool, for defendants Wilmer J. Eaton et ux and The Firestone Tire & Rubber Company in Case No. 49024.

## OPINION

By TOBIN, J.

The parties throughout, will be designated Plaintiff for the Tennessee Gas Company and Defendant for the Cleveland Trust Company and Firestone Tire & Rubber Company, et al.

Plaintiff filed, on November 20, 1952, Petitions regular in form, stating it is a Delaware corporation; that it is qualified to do business as a foreign corporation in the state of Ohio; that its charter permits the construction, ownership and operation of pipe lines to transport and distribute natural gas in interstate commerce from Texas through the state of Ohio and Pennsylvania and for ultimate use by residents of these states; that it has a Certificate of Public Convenience issued by the Federal Power Commission authorizing further con-

struction of pipe lines; that pursuant to said order it is securing easements to so construct pipe lines through Defendants' property, and that same is necessary. The property desired to be taken is described in detail, together with a map showing what is desired to be taken; the purpose is specifically described.

Plaintiff further states it has negotiated with the Defendants and has been unable to agree as to compensation. The use the land is to be subjected to is specifically stated. The prayer asks for proper steps to appropriate same and to acquire easements.

To this Petition, Defendant filed Motions to dismiss, claiming lack of jurisdiction over the subject matter by this Court and stating the Petition does not show sufficient facts to give this Court jurisdiction over the subject matter, and affirmatively states facts that exclude jurisdiction of this Court over the subject matter.

All parties filed Briefs and Defendants filed a Reply Brief.

All parties agree, that there is not before this Court, for its determination, the question either of the constitutionality of the Natural Gas Act; the power of the Federal Government to delegate the right of eminent domain, to this or any other corporation; nor the right generally, of this or any similar corporation acting under Federal granted powers, to appropriate land in Ohio. These will be assumed for the purpose of this Motion. Thus the question before this Court has been narrowed down to a single issue:—Whether this corporation may maintain this action to appropriate and condemn Ohio land in this particular Court. The Plaintiff's contention is that if this is a Court that may properly hear appropriation cases generally (and it is) then this Petition must be entertained at this time since this Court has jurisdiction of the subject matter as subject matter is defined by said Plaintiff. Defendants state that jurisdiction of the subject matter means, in Ohio, the right to appropriate, for public use and/or as a common carrier.

The test of jurisdiction is described as,

"Whether or not the tribunal has power to enter upon the inquiry—better expressed as follows:

"Jurisdiction of the subject matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question and to determine whether or not they are sufficient to involve the exercise of that power. It is not confined to cases in which the particular facts constitute a cause of action, but it includes every issue within the scope of the general power vested in the Court, by the abstract question."

Foltz v. St. Louis & S. F. R. Co., 8 C. C. A., 635; U. S. App. 576.

Tube City Mining & Milling Co. v. Otterson et al., 16 Ariz. 305; 146 Pac. 203; 1916E L. R. A., 306.

Sec. 11042 GC grants Probate Courts jurisdiction in appropriation proceedings by corporations in accordance with §11039 GC. This latter section states:—

"Appropriations can be made only when the corporation is unable to agree with the owner * * * as to compensation to be paid * * * for the land * * * therein sought to be appropriated."

For the purposes of this Motion, all facts stated in this Petition must be taken to be true. The Plaintiff states it is unable to agree with the owner as to compensation and that it is a corporation.

Therefore, this Court, being empowered to hear appropriation cases by corporations who are unable to agree as to compensation with the owners, has jurisdiction to entertain this case.

The Defendants raise another question, namely, that the Plaintiffs are not such a corporation as contemplated by this and similar appropriation statutes in the Ohio General Code; that this Court is limited to Ohio corporations with power of eminent domain, derived from the State of Ohio, or those foreign corporations who can qualify under the Ohio statutes, to have the right of eminent domain, as foreign railroads going through this state from another state. Sec. 10128 et seq. GC, also R. R. Sections.

I will examine this contention.

The word "corporation" as used in §11038 et seq. GC, clearly does not mean all corporations. It means corporations who have been granted the right to eminent domain to appropriate, or who can qualify within the various statutes granting certain types of corporations such rights, i. e. hydraulic companies, railroads, common carriers, etc. §10128 et seq. GC.

It has been decided that it does not mean corporations whose right to appropriate is derived from the sovereign power of a sister state. Postal Tel. Cable Co. v. C. C. C. of St. Louis Ry. Co. et al., 94 Fed. Reporter, 234.

The phraseology of the §§10120 and 10128 GC containing the words "organized in this state" and the words found in §10132 GC "subject to all the duties and liabilities of such (common) carriers under the laws of this state would indicate that the word "corporations" in §11038 et seq. GC, means Ohio corporations with power of eminent domain.

The single new factor injected into this case is that while this is a Delaware corporation, yet it derives the power of

eminent domain from the Federal Government by virtue of the Natural Gas Act, 15 U. S. Code Ann. Section 717F (h).

Is such a corporation entitled to bring an appropriation action in this Court?

The Plaintiff validly has the right of eminent domain and it has so been decided by the Federal court. Thatcher v. Tenn. Gas Transmission Co., 84 Fed. Suppl. 344; 180 Fed. 2nd, 644.

Therefore, it is a valid corporation with a lawful federally granted power of eminent domain and as such may appropriate property for its proper use in the State of Ohio and in this county. Is it, however, entitled to use this Court to do so?

The Natural Gas Act states:—

"When a holder of a certificate of Public Convenience and Necessity (and for the purpose of this motion Plaintiff is such a holder) cannot acquire by negotiation, a necessary right of way, it may acquire same in the district courts of the United States **or in the State Courts.**"

The right of the United States to use the State Courts in appropriation cases is amply discussed in the case of United States v. Jones, 27 L. Ed. 1015, at page 1017; 109 U. S., 1015.

In this case the Federal law transferred to the State (of Wisconsin) Board and State Courts the function of ascertaining the value of property taken by the United States in condemnation proceedings. The point was raised that this being a power vested in the United States Government, the exercise of this power of eminent domain of the Federal Government by a state, or a State Court, is prohibited as if expressly stated.

The Court states:—

"Yet from the time of its establishment that (federal) government has been in the habit of using, with the consent of the States, their officers, tribunals and institutions, as its agents. Their use has not been held violations of any principle derogating from the sovereign power of the Federal Government, but as a matter of convenience and as tending to a great saving of expense."

"The use of the Courts of the States in applying rules of naturalizations prescribed by Congress, the exercise at one time by State Justice of Peace of the power of committing magistrates for violation of Federal law, the use of State Penitentiaries for confinement of convicts under such law, are instances of the employment of state tribunals and state institutions in the execution of powers of the general government. At different times various duties have been imposed by Acts of Congress on State tribunals, they have been in-

vested with jurisdiction in civil suits and over complaints and prosecutions for fines, penalties and forfeitures arising under the laws of the United States and, though jurisdiction thus conferred, could not be enforced **against the consents** of the States, yet, when its exercise is not incompatible with State duties, and the States made no objection to it, the decisions rendered by the state tribunals have been upheld."

**Sec. 13768 GC** passed in **95 Ohio Laws, page 536,** May 10, 1902, gives consent to the United States to acquire property and makes the mode of assessment and collection of compensation outlined in **69 Ohio Laws, page 85,** passed April 23, 1872, and all acts amendatory thereof, applicable to cases brought by the United States. The act in **68 Ohio Laws, page 88** sets up the entire procedure in the Probate Court for appropriations by corporations and is the forerunner of our present appropriation statutes.

It is true that this section and those following, apply only to property acquired by the United States of America. But it is the only clear expression of the State on the question of the use of its tribunals. and particularly the Probate Court in condemnation proceedings under Federal Acts. It is an indication that the policy of this State is to permit such a use.

The next question would be: Does the effect of this consent carry over to corporations acting solely by Federal authority? In the absence of express withdrawal of consent, it is the belief of the Court that such consent does carry over to all matters of use of tribunals under Federal law and Federal authority. The Plaintiff has cited Williams et al v. Transcontinental Gas Pipe Line Corporation, 89 Fed. Supp. page 485. This case is as closely related by facts as any case cited by any of the parties to the instant case. The finding in the Williams case is to the effect that a corporation similarly claiming authority to appropriate property, by virtue of the Natural Gas Act in South Carolina, may do so and may use the State Courts even though South Carolina had no statutes granting power of condemnation to pipe line companies. The reasoning in the Williams case is adopted by this Court. While this Court does not entirely agree with the expressed doctrine of expediency as shown in the Court's language on page 488 which states:

"It may be noted that if the petitioners are correct in their contention that the defendant is barred from condemning in the State Court by the fact that South Carolina legislation has never set up a special procedure for gas pipe line condemnation, any **intended** pipe line, despite Federal Gas Act, could be blocked from crossing South Carolina by a single

landowner * * *. In all such cases defendant would be powerless to act if it did not have the right to condemn in the State Courts. I am unwilling to conclude that Congress accomplished such a futility when it passed the Natural Gas Act."

Nevertheless, in view of this case, the other cases herein cited and the reasoning above outlined, this Court adopts the finding in the Williams case and does find that it has jurisdiction of the subject matter and of this case.

The right of the Plaintiff to condemn land in Ohio by the authority of the Natural Gas Act having been held to be valid, at least for the purpose of this Motion, the only question remaining is whether the Federal Government enlarged the jurisdiction of the Probate Court, which is a **creature** of the State. This Court finds that it did not. If this Court had no powers to hear appropriations cases at all, then the Federal Act stating that cases may be heard in this Court would be an attempted enlargement and would be ineffective. A better example would be language in a Federal Statute of this nature authorizing the use in condemnation cases of our Municipal Courts. It would be ineffective. But this being a Court that has this general power to condemn given to it by the **State of Ohio,** which created it, then the use by a corporation who claims appropriation powers solely derived from the Federal Government and where said Federal Government, in its Act, provides for the use of State Courts with such powers, is valid. Particularly so in the absence of an express denial of such rights to use its tribunals by the State of Ohio; where it has given consent to the United States Government itself to use its Courts and method of procedure; where it lends its Courts to collection of judgments under the various Federal Rent Control Acts; and in naturalization matters, etc., thus generally indicating a consent by the State to such a use.

The powers of this Court are still granted solely by the State. The use of it by the Federal Government, and those claiming power from it, does not affect jurisdiction at all, either to enlarge or diminish. This is merely a case of the Federally authorized use of an existing State tribunal, which use has not been denied by the State of Ohio.

To recapitulate this Court's findings:—

1. This being a Court with powers granted to hear condemnation proceedings generally, it has jurisdiction of the subject matter in the present case since it is a case involving condemnation of private property.

2. Corporations deriving their power of eminent domain

through Acts of the Federal Government, may use the State Courts, and this Court, for the exercise of said power in proper cases when the Act of Congress so permits it and there has been no specific denial of such right to use said tribunal or Court by the State of Ohio. The Plaintiff so qualifying under the Natural Gas Act, which also provides for the use of State Courts, may thus so maintain this action.

3. The State of Ohio has not prohibited the use by the Federal Government or those corporations or agents it has granted power of eminent domain the use of its Courts. All indications of law and usage indicate a contrary policy by the State of Ohio.

EXCEPTIONS ALLOWED TO ALL PARTIES.